In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3121

FREDERICK J. GREDE, as Trustee of the
Sentinel Liquidation Trust,

*Plaintiff-Appellant*,

*v.*

THE BANK OF NEW YORK MELLON and
THE BANK OF NEW YORK MELLON CORPORATION,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 1919—**James B. Zagel**, *Judge*.

ARGUED FEBRUARY 18, 2010—DECIDED MARCH 18, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. After Sentinel Management
Group, Inc., entered bankruptcy, the court appointed
Frederick Grede as its trustee. A plan of reorganization
under Chapter 11 of the Bankruptcy Code created a
trust to hold most of Sentinel's assets (valued at more

than $500 million) while its business was being wound up, its investments cashed out, and its claims paid. The plan was confirmed in December 2008. No one asked for a stay or appealed, and the plan took effect. Grede changed hats from Chapter 11 Trustee to Trustee of the Sentinel Liquidation Trust.

Sentinel was a futures commission merchant and investment manager for commodity brokers, pension funds, and wealthy persons. Many of its customers (collectively the investors) believe that Sentinel defrauded them, and they blame not only Sentinel's managers but also The Bank of New York Mellon, which was Sentinel's clearing bank, lender, and depository for investment pools. Sentinel's claims against the Bank, including those seeking to recover payments that the Trustee characterizes as preferential transfers or fraudulent conveyances, were transferred to the Trust. Investors' claims against the Bank did not belong to Sentinel and were not part of the bankruptcy estate. But the terms of the Liquidation Trust permit investors to assign their claims to it for collection, and many of Sentinel's investors have done just that. The Trustee filed this action under the diversity jurisdiction to pursue the investors' claims.

The Bank made two threshold objections: first that the assignment was a collusive maneuver for the purpose of creating jurisdiction, which if so would knock out subject-matter jurisdiction, see 28 U.S.C. §1359; and second that the Trustee lacks "standing" to pursue the investors' claims. We put "standing" in scare quotes because the usage is abnormal. A trustee owns the trust's assets. If

these assets are depleted by fraud, the trustee may sue to redress the injury, even though the trust will distribute all of the proceeds to its beneficial owners. Indeed, a claim's assignee may sue even when the claim was assigned for the purpose of collection and there is no formal trust. See *Sprint Communications Co. v. APCC Services, Inc.*, 128 S. Ct. 2531 (2008). But in 1972 the Supreme Court used the phrase "lacks standing" to describe its conclusion that a bankruptcy trustee may not sue on behalf of investors who thought that a third party's acts had injured them and the debtor jointly. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972). The Court used the language of "standing" to refer, not to injury, causation, and redressability, the three ingredients of standing, see *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102–04 (1998), but to whether Congress had authorized a trustee to pursue a given kind of action. Whether a given action is within the scope of the Code is a question on the merits rather than one of justiciability. To avoid confusion, therefore, the rest of this opinion refers to the Trustee's "authority" to act on behalf of the investors, rather than his "standing" to do so.

A collusive assignment is a genuine jurisdictional problem. We treat an assignment as collusive when its sole function is to shift litigation from state to federal court. See, e.g., *Steele v. Hartford Fire Insurance Co.*, 788 F.2d 441, 444 (7th Cir. 1986); *Hartford Accident & Indemnity Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir. 1988).

Assignment to a trust could be designed to take advantage of the rule that a trust's citizenship is that of the

trustee, rather than the beneficiaries, for the purpose of 28 U.S.C. §1332(a). See *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980). Cf. *Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591 (7th Cir. 1990) (a non-trustee holder of injured parties' claims has the same citizenship as the claims' owners). But it would not be sensible to put the assignments to the Sentinel Liquidation Trust in the collusive category.

The Bank is a citizen of New York; many investors are not, and many individual claims exceed $75,000, so those investors could sue under the diversity jurisdiction in their own names. Or one investor could sue on behalf of a class; only the plaintiff's citizenship would count, just as only a trustee's citizenship counts. See *Snyder v. Harris*, 394 U.S. 332, 340 (1969). What's more, the Trust already is suing the Bank in federal court in its capacity as holder of Sentinel's claims to recover preferential or fraudulent transfers; the investors' claims could be added under the supplemental jurisdiction. See 28 U.S.C. §1367; *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005). The assignments thus do not move litigation from state to federal court; instead they facilitate efficient aggregation of claims, just as Fed. R. Civ. P. 23 does. Subject-matter jurisdiction is secure.

The district court dismissed the suit after concluding that the Trustee lacks authority to act on behalf of the investors. 409 B.R. 467 (N.D. Ill. 2009). It relied on *Caplin* and one circuit's conclusion that *Caplin*'s rule applies even after the bankruptcy ends. *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988). The Trustee observes

that this approach makes him the only one of the world's 6.8 billion people who cannot sue on assignments of the investors' claims; the Bank replies that the problem is not that Grede used to be a trustee in bankruptcy, but that the Trust holds assets that came from Sentinel's estate. According to the Bank, the Trust may use its assets to subsidize suit on the assigned claims; if the Trust loses, its beneficial owners will be out of pocket. The Bank submits that, in order to protect the Trust's beneficial owners, the Trustee should be forbidden to champion third-party claims. At least one circuit has rejected that argument, and the *Williams* decision, in holding that a liquidating trust created in bankruptcy may accept and sue on assignments of third-party claims. *Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 272 F. Supp. 2d 319, 323–24 (S.D. N.Y. 2003), affirmed & adopted, 450 F.3d 121, 123 (2d Cir. 2006). We must choose between the second circuit's holding and the ninth's.

*Caplin* gave three reasons for its conclusion that a bankruptcy trustee may not pursue third-party claims. First, the Bankruptcy Act of 1898 elaborately specified the powers of trustees in bankruptcy; none of its provisions so much as hinted that bankruptcy judges could transfer third-party claims to trustees. 406 U.S. at 428–29. (Six years after *Caplin*, the Bankruptcy Code of 1978 replaced the Bankruptcy Act of 1898. The parties agree that the Code does not make any change material to the issue in *Caplin*.) Second, the third-party claims in *Caplin* might have created a right of subrogation, which would have required the debtor in bankruptcy to reimburse the third-party defendant for anything the trustee collected on

behalf of the investors. The Court did not see any benefit in such a roundabout process. 406 U.S. at 429–31. Third, permitting a bankruptcy trustee to pursue third-party claims creates a risk of inconsistent or double recovery—because the claims had been placed in the trustee's hands by the judge rather than by the claims' owners. 406 U.S. at 431–34. None of these reasons applies to suit by a liquidation trustee on assigned claims.

Although the terms of the Bankruptcy Code govern the permissible duties of a trustee *in* bankruptcy, the terms of the plan of reorganization (and of the trust instrument) govern the permissible duties of a trustee *after* bankruptcy. A liquidation trust is no different in this respect from a reorganized debtor. No one believes that the powers and duties of the managers at United Airlines, which emerged from bankruptcy when the court approved its plan of reorganization in 2006, depend today on the terms of the Code. They depend on the terms of the plan, on United's articles of incorporation, and on rules of corporate rather than bankruptcy law. People are tempted to assume that bankruptcy is forever and that the Code continues to regulate the conduct of former debtors. We have held otherwise. See *In re Zurn*, 290 F.3d 861 (7th Cir. 2002); *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991). The Sentinel Liquidation Trust is a post-bankruptcy vehicle, just like the reorganized United Airlines. (That the bankruptcy proceeding continues after the plan's approval does not affect this conclusion; proceedings after the plan is confirmed often are necessary to value particular claims and distribute proceeds, but this process is independent of the reorganized entity's current operations.)

So much for *Caplin*'s first reason. The Bank does not seriously contend that a right of subrogation would enable it to make any claim against Sentinel's assets; the Bank would have had to make such an argument in the bankruptcy court, and it did not. Today the Bank's rights against the Trust are limited by the plan of reorganization. As for *Caplin*'s third reason: the Trust holds only those third-party claims that investors have assigned, so there is no possibility of inconsistent dispositions or duplicative recoveries. By proceeding on the investors' voluntary assignments rather than a bankruptcy judge's directive, Sentinel's plan of reorganization cures *Caplin*'s third problem.

The Bank cites *Caplin* often but in the end does not rely on any of its three reasons. As we've mentioned, the Bank's principal argument is that the Trust should not be allowed to deplete its assets by the expense of litigating the investors' claims. If the Trust pursues these claims and loses, legal fees and other expenses are out the window, for the investors assigned their claims without promising to underwrite the Trust's litigation. Yet this is no skin off *the Bank's* nose. The Bank is not among the Trust's beneficial owners—and, if it were, the time to object would have been when the plan of reorganization was proposed. The possibility that the Trust would use some of its assets to sue on behalf of the assignors was apparent to any reader of the plan or the trust documents. Any beneficial owner could have objected and demanded that the assignors contribute not only their claims but also liquid assets. No one objected on this ground, however, and the plan, having taken effect, is not open to

the sort of collateral attack that the Bank now wages. *In re UNR Industries, Inc.*, 20 F.3d 766 (7th Cir. 1994); *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000).

The Bank is trying to fend off the Trust's claims not by standing on its own rights, but by asserting that the litigation might injure strangers (the Trust's beneficiaries). It is a basic principle that litigants can't invoke the rights of third parties. American law recognizes a few instances in which *jus tertii* claims ("third-party standing") are allowed, but these are rare. See *Kowalski v. Tesmer*, 543 U.S. 125 (2004) (discussing authority); cf. *MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007) (discussing prudential limits when third parties suffer the principal injury). The Bank does not even try to show that it meets the requirements for third-party standing, let alone for the sort of third-party claim that would justify a belated challenge to a confirmed plan of reorganization.

Although the Bank tries to recast this argument as one about Delaware trust law (the Trust is a business trust under Delaware law), this line of argument does more to show *Caplin*'s irrelevance than to escape from the problem that the Bank is asserting strangers' supposed entitlements. For if the Trust's ability to accept and sue on the assigned claims really does depend on Delaware law, then *Caplin*, which rests on federal bankruptcy law, does not have a role to play. We need not get into this subject, however, because the Trust's beneficial owners, rather than the Bank, are the right persons to make any contention that the Trust should not have accepted the assignments of the investors' choses in action.

We conclude that *Caplin* does not apply to the activities of a liquidating trust created by a plan of reorganization (or, for that matter, an ex-debtor operating under a confirmed plan). The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.