C. Kathryn Preston, United States Bankruptcy Judge
I. INTRODUCTION
This matter is before the Court on Plaintiff Lucien J. Tujague, Jr.'s ("Plaintiff") Motion for Preliminary Injunction and Writs of Attachment Against the Castro Family Trust, LLC (Doc. # 4) (the *799 "Motion"), filed on September 28, 2018, and the Castro Family Trust, LLC's ("Defendant") Response Opposed to Plaintiff Lucien J. Tujague, Jr.'s Motion for Preliminary Injunction and Writs of Attachment Against the Castro Family Trust, LLC (Doc. # 44), filed October 2, 2018. On October 3, 2018, this Court held an evidentiary hearing to receive evidence in support of the Motion. Present at the hearing were attorney Geoff Henley representing Plaintiff, attorneys Gerrit Pronske and Robert Tobey representing Defendant, Trustee Amy Bostic and attorney Kenneth Richards representing the Trustee.[1] Although not a party, the Trustee verbally joined in the Motion. After considering the evidence and argument, the Court denies Plaintiff's Motion for the reasons that follow.
II. JURISDICTION
The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05-02 entered by the District Court for the Southern District of Ohio referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A), (H), (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.
III. BACKGROUND
On January 22, 2017, Landash Corporation ("Debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Code. Amy Bostic is the duly appointed Chapter 7 Trustee (the "Trustee").
On or about September 5, 2018, Plaintiff filed a complaint against Defendant and Jason Elbert Adkins ("Adkins") in the District Court for the Eastern District of Texas, commencing this case. In pertinent part, the Complaint alleges that Adkins and a co-conspirator John Eckerd engaged in a pattern and practice of defrauding various persons and entities by enticing them to invest in the purchasing of off-the-road ("OTR") tires, in the form of either a loan to Debtor or Adkins or a related entity, or, as in the case of Plaintiff, co-ownership of the tires. OTR tires are massive tires used on mining, construction or industrial sites; they sell for up to $120,000 each. There is a substantial secondary market for used OTR tires. The proposed plan was that Debtor or Adkins or an associated entity would purchase tires with the financial assistance of Plaintiff, identify a buyer, and sell the tires, presumably at a profit. Plaintiff was enticed into some 40 transactions with Adkins and Debtor. However, Adkins and/or Debtor persuaded numerous others to invest in the same tires, and the tires would not be purchased, or if purchased, not sold, or would be sold but the sale proceeds not remitted to the investor. The funds received from investors would be diverted to Adkins, his co-conspirators, and related entities. Plaintiff lost approximately $12,900,000. The Complaint asserts numerous causes of action: RICO conspiracy, violation of the Texas Theft Liability Act, constructive trust, conversion, avoidance of fraudulent transfers, negligence & gross negligence, hindering a secured creditor, conspiracy, aiding and abetting, alter ego & piercing the corporate veil.
In the count of the complaint asserting fraudulent transfer, relying on the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Plaintiff alleges that Adkins fraudulently transferred assets of Debtor to Defendant. Upon motion of Plaintiff, on September 6, 2018, the District Court entered a temporary restraining order and *800 attachment (the "TRO"), prohibiting Defendant from:
a. Transferring, lending or removing any funds from the Castro Family Trust;
b. Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of any of Plaintiff's or Defendants' property;
c. Misrepresenting or refusing to disclose to Plaintiff or to the Court on proper request the existence, amount, or location of any property;
d. Damaging or destroying tangible property of any Defendant;
e. Tampering with the tangible property of any Defendant, including any documents, that represents or embodies anything of value, and/or causing pecuniary loss to Plaintiff;
f. Selling, transferring, assigning, mortgaging, encumbering or in any manner alienating any of Plaintiff's or Defendants' property, whether real or personal, without obtaining the consent of Plaintiff and the Court;
g. Incurring indebtedness except as authorized by the Court;
h. Making withdrawals from any checking or savings account in any financial institution for any purpose except by authorized by the Court;
i. Spending any sum of cash for any purpose except as specifically authorized by the Court;
j. Withdrawing or borrowing in any manner for any purpose from any retirement, profit sharing, pension, disability, employee benefit plan, employee savings plan, individual retirement plan, or Keogh account;
k. Opening any new savings, checking, money market, or stock trading accounts with any bank, brokerage, or financial institution;
l. Purchasing, or otherwise acquiring any interest in real property without obtaining the consent of Plaintiff and the Court;
m. Purchasing or acquiring any chattel, including OTR Tires, without obtaining consent of Plaintiff and the Court.
n. Engaging in criminal act in violation of the penal laws of the United States of America and the State of Texas.
On September 21, 2018, being apprised of Debtor's bankruptcy case and recognizing that a fraudulent transfer claim is a core bankruptcy proceeding, the District Court severed the fraudulent transfer claims and transferred them to the Southern District of Ohio for referral to this Court. (See Doc. # 42). The Texas District Court also extended the TRO for another 14 days. (See Docs. # 36, 38). The case arrived at this Court on September 28, 2018. Although a motion for preliminary injunction was already pending in the transferred case (see Doc. # 1), on that same date, Plaintiff filed the instant Motion. In essence, the Motion seeks to freeze assets of Defendant to avoid dissipation of assets to which the Trustee may lay a claim.
IV. LAW & ANALYSIS
a. Standard for Granting a Preliminary Injunction
Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction only after providing notice to the adverse party and only if the movant posts security. FED. R. CIV. P. 65(a), (c).[2] "The purpose of a preliminary injunction is merely to preserve *801 the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch , 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Courts must consider four factors in determining whether to issue a preliminary injunction: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." Cooper v. Honeywell Int'l, Inc ., 884 F.3d 612, 615 (6th Cir. 2018) (internal quotation marks and citation omitted); see also Winter v. NRDC, Inc. , 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).
Although courts must balance each factor, the Sixth Circuit is clear that a court may not issue a preliminary injunction when there is simply no likelihood of success on the merits. Winnett v. Caterpillar, Inc. , 609 F.3d 404, 408 (6th Cir. 2010) ; Mich. State AFL-CIO v. Miller , 103 F.3d 1240, 1249 (6th Cir. 1997). Moreover, the Supreme Court has emphasized that one seeking a preliminary injunction must demonstrate that irreparable injury is likely to occur in the absence of an injunction. Winter , 555 U.S. at 20, 129 S.Ct. 365. The proof that a plaintiff must provide to obtain a preliminary injunction is "much more stringent" than what is required to survive a motion for summary judgment. Leary v. Daeschner , 228 F.3d 729, 739 (6th Cir. 2000).
b. Likelihood of Success on the Merits
It is axiomatic that causes of action to avoid fraudulent transfers of a debtor's assets belong to the bankruptcy estate. See , e.g ., 11 U.S.C. § 323 ("(a) The trustee in a case under this title is the representative of the estate. (b) The trustee in a case under this title has capacity to sue and be sued."), § 544, § 548 § 550(a) ("to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate..."); see also Bauer v. Commercial Union Bank , 859 F.2d 438, 441 (6th Cir. 1988). Plaintiff has sued Defendant under sections 24.005 and 24.006 of TUFTA. However, once a bankruptcy proceeding intervenes, a creditor may not pursue a fraudulent transfer avoidance action under state law on its own behalf unless the cause of action is abandoned or the estate settles or releases the cause of action. 10 COLLIER ON BANKRUPTCY P. 548.02(4), (5) (Alan J. Resnick & Henry J. Sommer eds., 16th rev. 2018). See also NLRB v. Martin Arsham Sewing Co. , 873 F.2d 884, 887 (6th Cir. 1989) ("the Bankruptcy Code contains provisions empowering the court or the trustee in bankruptcy to recover property belatedly, unlawfully, or fraudulently transferred by the debtor in an effort to place it outside the reach of creditors. Any effort to recover this property is essentially an action to recover property that belongs to the [bankruptcy estate].").
The Sixth Circuit, like other circuits, recognizes that derivative standing may be available to certain creditors under limited circumstances, even in cases under Chapter 7. See In re Trailer Source, Inc. , 555 F.3d 231, 243 (6th Cir. 2009) ("[T]he bankruptcy court ... should be able to exercise its equitable powers to authorize a creditor to pursue recovery of fraudulently transferred property for the benefit of the estate."). But a creditor must first obtain court approval to proceed, and to obtain such approval, must illustrate that: (1) demand was made on the trustee to act; (2) the trustee declined; (3) a colorable claim exists that would benefit the estate; and (4) the trustee's inaction was an abuse of *802 discretion. Canadian Pac. Forest Prods. v. J.D. Irving, Ltd. (In re Gibson Group, Inc. ), 66 F.3d 1436, 1446 (6th Cir. 1995).
In the instant case, the bankruptcy estate has not abandoned or released the cause of action. Nor has Plaintiff alleged that he has derivative authority to prosecute the fraudulent transfer claims, or that the Trustee has delegated her authority to Plaintiff. Indeed, the Trustee attended the hearing, and when the Court inquired of her regarding her role, she stated only that she joins in the Motion and that she is not prepared at this time to seek to intervene or be substituted as plaintiff. She did not suggest that she wanted to delegate her authority to Plaintiff or give him derivative authority to advance claims of the bankruptcy estate, even temporarily or for a limited purpose (e.g., to prosecute the Motion). Thus, Plaintiff remains without authority and lacks standing to pursue this adversary proceeding.[3]
Additionally, the adversary proceeding is defective for lack of a necessary party. Plaintiff presented evidence of two streams of funds that found their way into Defendant's possession: (1) funds which were transferred from Euro Tread Corp. ("Euro"), and (2) funds ($372,000) that were transferred from Debtor to La Mia Bella Famiglia ("La Mia"), then from La Mia to Euro, and finally from Euro to Defendant. During the hearing, the Court learned that La Mia is in its own Chapter 7 bankruptcy case in the Eastern District of Texas, and has its own Chapter 7 trustee. To the extent that some of the funds which Plaintiff is pursuing became an asset of La Mia, it seems that La Mia's bankruptcy trustee would be a necessary and indispensable party to resolution of this adversary proceeding, or any action brought by Trustee.[4] Yet La Mia's trustee has not been named or joined in this case. Based on this fact, Plaintiff cannot establish a "likelihood of success on the merits" with this adversary proceeding postured as it currently is.
While the defects in this case could possibly be cured, the Court must take the case as the Court finds it. The Court cannot assume that the parties or the Trustee will proceed to resolve the various issues, particularly in light of the fact that it is not yet known whether the Trustee will have assets in the case from which to fund the costs of litigation.
c. Other Factors
The Court must also consider whether there is a threat of irreparable harm to Plaintiff, whether issuance of the injunction "would cause substantial harm to others," and "whether the public interest would be served by granting injunctive relief." Cooper , 884 F.3d at 615. Harm is usually considered irreparable where there is no adequate remedy at law. See , e.g. , Deerfield Med. Ctr. v. Deerfield Beach , 661 F.2d 328, 338 (5th Cir. 1981) ; see also Morales v. Trans World Airlines , 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (a preliminary injunction will not be granted if an adequate remedy at law is available). A plaintiff may demonstrate lack of an adequate remedy at law by showing that the defendant is effectively judgment-proof. See , e.g. , *803 Lakeview Tech., Inc. v. Robinson , 446 F.3d 655, 657 (7th Cir. 2006). But there was no such showing here.
Dan and Donna Castro formed Defendant in 2005; Defendant holds all of the Castros' personal assets and funds their livelihood. The undisputed evidence presented by Defendant indicated that the Castros have been rendered completely without funds due to the TRO granted by the Texas District Court. They apparently do not have access to funds to meet current living expenses and medical care needs. They are presently in Europe and without means to return home. This is a hardship that weighs against granting the injunction. See Winter , 555 U.S. 7, 9, 129 S.Ct. 365 ("In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' ").
The last factor, the public interest, "will not be as important as the other factors considered in the award of preliminary injunctive relief in actions involving only private interests, [but] it will be prominently considered in actions implicating government policy or regulation, or other matters of public concern." 13 MOORE'S FEDERAL PRACTICE § 65.22 (Matthew Bender 3d. ed). The Court is of the opinion that matters involving the bankruptcy estate and administration of the bankruptcy estate are in the public interest. Protecting a potential for bringing assets to the bankruptcy estate and preserving the opportunities for the trustee to collect judgments from avoidance actions, so that creditors may receive a dividend from the estate, promote the public interest. However, those considerations cannot outweigh the lack of likelihood that Plaintiff will be successful on the merits of the case. On balance, the Court finds that granting the Motion is not appropriate.
The Court feels compelled to note that this opinion should not be construed as a comment on the credibility of testimony by Plaintiff or his witnesses, especially Mr. Davis, both of whom were strongly credible. This decision is necessitated by the current status of this adversary proceeding as discussed above. For that reason, this order is without prejudice to Plaintiff to seek relief from the Texas District Court as it may appear appropriate in connection with the claims remaining with the District Court and without prejudice to the Trustee to file a similar motion if she intervenes in this case.
V. CONCLUSION
In accordance with the foregoing, it is hereby
ORDERED that Plaintiff's Motion is DENIED .
IT IS SO ORDERED .

Ms. Bostic and Mr. Richards attended solely to observe. Mr. Richards has filed a notice of appearance in this case (Doc. # 2), but the Trustee is not a party and has not filed a motion to intervene or be substituted as party plaintiff.

Rule 65 is applicable in adversary proceedings except that a debtor, trustee, or debtor in possession need not comply with Rule 65(c)'s requirement that the movant post security before obtaining an injunction. Fed. R. Bankr. P. 7065.

"It is a basic principle that litigants can't invoke the rights of third parties. American law recognizes a few instances in which jus tertii claims ('third-party standing') are allowed, but these are rare." Grede v. Bank of N.Y. Mellon , 598 F.3d 899, 903 (7th Cir. 2010) ; see also Food & Water Watch, Inc. v. Vilsack , 808 F.3d 905, 913 (D.C. Cir. 2015) (inability to show likelihood of standing requires denial of motion for preliminary injunction).

The Court also has concerns that this adversary proceeding may be in violation of the automatic stay in La Mia's bankruptcy case.