# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1591

_____

Enterprise Financial Group, Inc.,

*Plaintiff - Appellant*,

v.

Richard Podhorn; GR3 Construction, LLC; Capital Constructors Development, LLC; SLC Group, LLC; CLS Group, LLC; LCS Group, LLC; Cornerstone Investors, LLC; CapDev, LLC; Wilmer Farms, LLC; Highland Management Group, LLC; Maundeigh-Blu, LP; Maundeigh-Blu Management Company, Inc.; Richard J. Podhorn Revocable Trust U/T/A Dated May 18, 2006; Locomotive Investments, LP; HSWB, LLC; HS157, LLC; PFWB, LLC; WB1, LLC; 6ND, LLC; 6NWB, LLC; Missouri Equity Solutions, LLC; MO Housing & Re-Development, LLC; Contract Holdings, Inc.; Simpson Living Trust; Automotive Professional Resources, LLC; JCL Realty, LLC; James Capital Investments, LP; 4S Development, LLC; Wentzville Cinema Company, LLC,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2019
Filed: July 16, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Enterprise Financial Group, Inc. sued Richard Podhorn, GR3 Construction, LLC, and several affiliated entities, advancing a claim under the Missouri Uniform Fraudulent Transfer Act. The district court dismissed the complaint without prejudice on the ground that there was no case or controversy because Enterprise lacked Article III standing. We conclude, however, that Enterprise has alleged facts sufficient to demonstrate the elements of standing. We therefore reverse and remand for further proceedings.

According to the amended complaint, Enterprise sells consumer protection products such as vehicle service contracts. Podhorn and GR3 Construction were part-owners of North American Vehicle Insurance Services LLC, also known as NAVISS, an entity that sold Enterprise's vehicle service contracts. NAVISS agreed to pay a share of refunds for early cancellation of the vehicle service contracts, but failed to meet this obligation. The complaint alleges that NAVISS's owners transferred NAVISS's funds to themselves and various affiliated entities, rendering NAVISS insolvent. As a result, Enterprise was forced to pay NAVISS's share of refunds totaling more than $6 million. NAVISS also agreed to use two advances from Enterprise, in the amounts of $250,000 and $400,000, exclusively for marketing and advertising expenses. But NAVISS allegedly transferred at least $350,000 from these advances to its owners and affiliated entities, and the funds were thus not used for their intended purpose.

Enterprise sued NAVISS and its owners in Texas court, seeking damages, injunctive relief, and a declaration that Enterprise has a security interest in NAVISS's assets. While that suit was pending, Enterprise brought this action against Podhorn, GR3 Construction, and other entities that received transfers from NAVISS, asserting a claim under the Missouri Uniform Fraudulent Transfer Act. The Act provides relief for "creditors" who are victims of fraudulent transfers. *See* Mo. Rev. Stat.

§§ 428.024, .029, .039, .044. A "creditor" is an individual or entity that has a "right to payment" from a debtor, "whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 428.009(3)-(6), (9). A debtor that retains no interest in the transferred assets is not a necessary party to the fraudulent-transfer action, *see Springfield Gen. Osteopathic Hosp. v. West*, 789 S.W.2d 197, 201 (Mo. Ct. App. 1990), and the Act provides remedies directly against transferees. *See* Mo. Rev. Stat. §§ 428.039, .044.

Several defendants moved to dismiss this action for lack of an Article III case or controversy. The district court granted the motion, concluding that Enterprise lacks Article III standing. The court reasoned that Enterprise's alleged injuries are "hypothetical and conjectural," because the Texas court has not rendered a judgment on whether NAVISS breached any agreements or owes Enterprise any money. As the defendants mounted a facial attack on the plaintiff's standing, we review the district court's dismissal of the action *de novo*, accepting the material allegations in the amended complaint as true, and drawing all permissible inferences in Enterprise's favor. *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017).

Article III limits the judicial power to resolving "Cases" or "Controversies," and the standing doctrine is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum" of standing consists of three elements. *Id.* "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The district court concluded that Enterprise faltered at the first element.

We conclude that the absence of a judgment in the Texas litigation does not mean that Enterprise lacks Article III standing. To demonstrate injury in fact at the

pleading stage, Enterprise must demonstrate that its alleged injury is actual or imminent, as well as concrete and particularized. *See id.* at 1547-48. According to the amended complaint, NAVISS agreed to pay its share of refunds for early cancellation of vehicle service contracts and to use money advances for specified purposes, but failed to meet these obligations. As a result, Enterprise suffered losses in excess of $6 million. An alleged economic harm "is a concrete, non-speculative injury," *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014), and the harm here is personal to Enterprise. The amended complaint thus alleges an injury that is actual, concrete, and particularized.

Standing under Article III to bring a claim in federal court is distinct from the merits of a claim under the Missouri Uniform Fraudulent Transfer Act. Whether Enterprise must first secure a judgment against NAVISS in Texas before recovering against the defendants under the Act is a question that bears on the merits of the claim. As we understand Missouri law, a plaintiff proceeding under the Act might be required to show at least a pending or threatened lawsuit against an alleged debtor in order to have a "claim" under the Act. *See Curtis v. James*, 459 S.W.3d 471, 475-76 (Mo. Ct. App. 2015). But whether or not Enterprise can satisfy the elements of a claim under the Act, it has alleged a present injury in fact that is sufficient to establish Article III standing.

The defendants argue that Enterprise cannot demonstrate the second element of standing—*i.e.*, that its alleged injury is fairly traceable to the conduct of the defendants. They assert that Enterprise's alleged injury resulted from the "independent action" of a third party, NAVISS, that is not before the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation omitted). NAVISS's conduct as the transferor, however, was not the sole cause of Enterprise's alleged injury. A fraudulent transfer requires both a transferor and a transferee. The defendants' alleged receipt and retention of the transferred assets kept these assets from Enterprise and rendered NAVISS insolvent, thereby contributing to Enterprise's

economic harm. Enterprise's alleged injury is thus "fairly traceable" to the defendants' alleged participation in the transfers as transferees.

The defendants do not challenge the final element of standing, and Enterprise has adequately demonstrated that its injury "is likely to be redressed by a favorable judicial decision." *See Spokeo*, 136 S. Ct. at 1547. The Act provides remedies against transferees, and these remedies would compensate Enterprise to the extent of its claim against NAVISS if the claim has merit. *See* Mo. Rev. Stat. §§ 428.039.2, .044.2.

For these reasons, the order of dismissal is reversed, and the case is remanded for further proceedings. We leave the alternative argument of appellee Simpson Living Trust—that Enterprise lacks "statutory standing"—to the district court in the first instance.

_____