**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2907
_____

IN RE: WILTON ARMETALE, INC.,
a/k/a Wapita, Inc., Debtor


ARTESANIAS HACIENDA REAL S.A. DE C.V.,
                                        Appellant

v.

NORTH MILL CAPITAL, LLC; LEISAWITZ HELLER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-18-cv-05553)
District Judge: Honorable Edward G. Smith
_____

Argued: May 19, 2020

Before: McKEE, BIBAS, and COWEN, *Circuit Judges*

(Filed: August 4, 2020)
_____

Barry L. Goldin          [ARGUED]
3744 Barrington Drive
Allentown, PA 18104
    *Counsel for Appellant*

Sam P. Israel
Timothy L. Foster          [ARGUED]
Sam P. Israel P.C.
180 Maiden Lane, 6th Floor
New York, NY 10038
    *Counsel for Appellee North Mill Capital LLC*

Jeffrey B. McCarron          [ARGUED]
Kathleen M. Carson
Swartz Campbell
One Liberty Place, 38th Floor
1650 Market Street
Philadelphia, PA 19103
    *Counsel for Appellee Leisawitz Heller*

_____

OPINION OF THE COURT
_____

BIBAS, *Circuit Judge*.

When a company declares bankruptcy, that declaration does not erase a creditor's constitutional standing to sue. As a company nears insolvency, some may plunder the sinking ship. By depleting its remaining assets, they lower the odds that the company will repay its creditors. That risk of loss gives the creditors constitutional standing to sue the plunderers.

If the company declares bankruptcy, though, creditors may lose the statutory authority to pursue those claims. Under the Bankruptcy Code, a trustee manages the company's estate, including those creditors' asset-plundering claims. The Code thus shifts the statutory authority to pursue those claims from the creditors to the trustee, unless the trustee relinquishes it.

At times, we have said that this transfer of statutory authority takes away a creditor's "standing." But as the Supreme Court recently held, that statutory question has nothing to do with constitutional standing. We now clarify that Bankruptcy Code "standing" is not constitutional standing (and thus is not jurisdictional) and that Chapter 7 trustees can relinquish the statutory authority to pursue a claim back to a creditor.

In this case, we hold that the creditor plaintiff has both constitutional standing and the statutory authority to sue two defendants who allegedly plundered a now-bankrupt company that owed the creditor money. When the trustee formally abandoned the estate's claims against those defendants, he returned the power to pursue those claims to the creditor. So we will vacate and remand the District Court's order to the contrary.

## I. BACKGROUND

### A. The alleged asset-plundering scheme

On appeal from the District Court's dismissal, we accept the complaint's allegations as true: Several years ago, Artesanias Hacienda Real S.A. de C.V. sold wares to Wilton Armetale, Inc. But Wilton never paid for them. So Artesanias sued Wilton and its then-owner, who had guaranteed the purchase. Artesanias obtained a judgment for around $900,000

and all the owner's shares in Wilton, which he transferred to an affiliate of Artesanias. Soon after, Artesanias recorded its judgment as a lien on a valuable warehouse that Wilton owned.

Once Artesanias took over Wilton, it got access to privileged documents held by Leisawitz Heller, a law firm that had represented Wilton and its previous owner. Those documents showed that Wilton was insolvent and that its previous owner and North Mill Capital, another creditor had plotted with Leisawitz Heller to plunder the company's remaining assets.

Among other things, the previous owner, Leisawitz Heller, and North Mill had engineered a sale of Wilton's non-real-estate assets to an entity that North Mill chose, even though that entity paid hundreds of thousands of dollars less than what other bidders had offered. The previous owner and Leisawitz Heller had also let North Mill file inflated judgments against Wilton on its debts to North Mill, which gave North Mill a competing lien on the warehouse. In exchange, Wilton's owner received a 20% cut of the proceeds from the warehouse sale and Leisawitz Heller got tens of thousands of dollars in outstanding and future legal fees. After striking this deal, North Mill tried to foreclose on the warehouse.

When it discovered this scheme, Artesanias sued North Mill and Leisawitz Heller. It alleged that by "divert[ing]" Wilton's remaining assets, they had "hinder[ed] … Artesanias' ability to enforce and collect obligations [owed to it] from Wilton." App. 56. Artesanias sought damages, an order setting aside the purportedly fraudulent asset transfers, and an order stopping the warehouse foreclosure.

### B. Wilton declares bankruptcy

Two months after Artesanias sued, the insolvent Wilton filed for Chapter 7 bankruptcy. The Bankruptcy Code's automatic stay stopped the warehouse foreclosure. *See* 11 U.S.C. §362(a). The bankruptcy court soon appointed a trustee to liquidate Wilton's remaining assets.

To resolve Artesanias's and North Mill's competing claims to the warehouse, the trustee entered separate settlements with each of them so that he could sell it. The trustee agreed to (1) split the sale proceeds between the two, (2) release the estate's claims against North Mill, and (3) not interfere with Artesanias's pending or potential claims against North Mill and others.

At the hearing on the motions to approve the settlements, the trustee, Artesanias, North Mill, and the bankruptcy court all agreed that "nothing" in the settlements would "affect [Artesanias's] litigation" against North Mill. App. 235–36. Relying on those statements, the bankruptcy court entered both settlements and ordered the trustee to sell the warehouse. The trustee later did.

Afterwards, Wilton's bankruptcy estate had few assets left. Among them were legal claims that the trustee could bring against those who had allegedly plundered the company. If those claims succeeded, the estate could recover money to repay its remaining creditors, including Artesanias.

But to bring those claims would cost money. And any recovery was speculative. Rather than spend the estate's few remaining assets pursuing those claims, the bankruptcy court let

5

the trustee abandon all but a select few of them. App. 468–74 (the Abandonment Order). Those few included negligence, professional-liability, and breach-of-contract claims against Leisawitz Heller. The other, abandoned claims were left for Wilton itself or Artesanias to pursue.

### C. Artesanias's claims are dismissed for lack of standing

Meanwhile, Artesanias's claims against North Mill and Leisawitz Heller continued for a time in the District Court. But when the defendants moved to dismiss the amended complaint, the court declined to rule on their motions. Instead, it referred the whole action to the bankruptcy court handling Wilton's liquidation because Artesanias's claims were "related to" the bankruptcy. App. 265–66 (citing 28 U.S.C. § 157(a)).

On referral, the bankruptcy court reasoned that Artesanias "lack[ed] standing to sue." *Artesanias Hacienda Real S.A. de C.V. v. N. Mill Capital LLC (In re Wilton Armetale, Inc.)*, No. 16-16779, 2018 WL 6440600, at *1 (Bankr. E.D. Pa. Dec. 6, 2018). Once the company had declared bankruptcy, Artesanias's claims became property of the estate to be managed by the trustee. So only the trustee, it explained, had standing to sue. It also rejected Artesanias's claim that the Abandonment Order gave it standing to bring those claims.

Artesanias challenged those conclusions before the District Court, which agreed with the bankruptcy court and "dismissed [the suit] for lack of standing." *Artesanias Hacienda Real S.A. de C.V. v. N. Mill Capital LLC (In re Wilton Armetale, Inc.)*, 607 B.R. 189, 211 (E.D. Pa. 2019). It found that Artesanias's

6

claims were derivative of harm that the defendants had inflicted on Wilton. That meant that only the bankruptcy trustee had standing to pursue them. And it held that the trustee could not abandon to Artesanias the power to do so.

Artesanias now appeals. We review the dismissal de novo. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 356 (3d Cir. 2018).

## II. BANKRUPTCY "STANDING" IS NOT AN ELEMENT OF A CREDITOR'S CONSTITUTIONAL STANDING

At the outset, we must clean up some confusing legalese. North Mill and Leisawitz Heller ask us to dismiss this appeal for lack of jurisdiction because Artesanias lacks "standing." They argue that under the Bankruptcy Code, Wilton's bankruptcy took away Artesanias's power to sue. In past decisions, we have called that statutory authority a creditor's "standing" to assert claims in bankruptcy. But since then, the Supreme Court has clarified that a litigant's constitutional standing to bring a suit differs from its statutory authority to maintain one. Because disputes over statutory authority do not affect our jurisdiction, and because Artesanias has constitutional standing to sue, we can hear this appeal.

### A. "Standing" has imprecisely referred to a bankruptcy litigant's statutory authority to sue

When a debtor declares bankruptcy, most of its property gets transferred to its estate. 11 U.S.C. § 541. The estate encompasses "all kinds of property, including … causes of action." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002) (quoting

7

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)); *see* 11 U.S.C. §541(a)(1). "A cause of action [becomes] property of the estate if the claim existed at the commencement of the [bankruptcy] filing and the debtor could have asserted the claim on his own behalf under state law." *Foodtown*, 296 F.3d at 169 n.5.

A court-appointed bankruptcy trustee manages the estate's property, including those causes of action. The trustee "is the representative of the estate" with the "capacity to sue and be sued" on its behalf. 11 U.S.C. §323(a), (b). So once a cause of action becomes the estate's property, the Bankruptcy Code gives the trustee, and only the trustee, the statutory authority to pursue it.

At times, we have called that statutory authority the trustee's exclusive "standing" to assert those claims. We have held that "[a]fter a company files for bankruptcy, [its] creditors lack *standing* to assert claims that are property of the estate." *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (emphasis added) (internal quotation marks omitted); *accord Foodtown*, 296 F.3d at 169 (same). Our use of that terminology followed the Supreme Court's lead in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 416–17 (1972). We were not alone. *See, e.g.*, *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petrol., Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008); *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 511–12 (4th Cir. 2005).

That imprecise language is confusing, so some courts have tried to clear up the confusion. As Judge Easterbrook has noted, writing for the Seventh Circuit, bankruptcy "standing"

8

is doctrinally "abnormal." *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010). He explained that the *Caplin* Court "used the language of 'standing' to refer, not to … [constitutional] standing, but to whether Congress had authorized a trustee to pursue a given kind of action." *Id.* (internal citation omitted). And "[w]hether a given action is within the scope of the [Bankruptcy] Code is a question on the merits rather than one of justiciability." *Id.* Thus, "[t]o avoid confusion," the court recharacterized bankruptcy "standing" as the trustee's "'authority' to act on behalf of the [estate]." *Id.* Our sister circuit's explanation is persuasive and we will adopt it.

## B. Bankruptcy "standing" is not constitutional standing

Like the Seventh Circuit, we now clarify that a litigant's "standing" to pursue causes of action that become the estate's property means its *statutory* authority under the Bankruptcy Code, not its *constitutional* standing to invoke the federal judicial power. That articulation aligns our precedent with a recent Supreme Court decision that excised "prudential" or "statutory" additions to the "'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 & n.4 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Given this "intervening Supreme Court precedent," we may "reevaluate" our prior decisions to the contrary. *In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008).

In *Lexmark*, the Supreme Court reaffirmed that constitutional standing has only three elements: (1) "a concrete and particularized injury in fact," (2) that is "fairly traceable" to the

defendant's conduct, and (3) that "a favorable judicial decision" would likely "redress[]." 572 U.S. at 125 (internal quotation marks omitted). Once a plaintiff satisfies those elements, the action "presents a case or controversy that is properly within federal courts' Article III jurisdiction." *Id.*

Other requirements, whether prudential or "tied to a particular statute," do not affect our constitutional jurisdiction. *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (citing *Lexmark*, 527 U.S. at 128 & n.4). Instead, they go to the merits. *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 & n.3 (3d Cir. 2015); *accord Grede*, 598 F.3d at 900.

The statutory requirements of bankruptcy "standing" exceed the three elements of constitutional standing. Under *Lexmark*, they do not affect our constitutional jurisdiction, but only whether Artesanias has a claim on the merits.

## C. Artesanias retained constitutional standing throughout the bankruptcy

Artesanias has constitutional standing to bring its claims. It sued North Mill and Leisawitz Heller after discovering their alleged scheme to plunder Wilton's remaining assets. It asserted that by depleting those assets, they had frustrated its ability to recover on its judgment against Wilton and so caused it economic harm.

Those allegations give Artesanias constitutional standing. By allegedly plundering Wilton, they lowered Artesanias's odds of being repaid. That "[m]onetary harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) (Alito, J.). The alleged

10

misconduct is indirectly but fairly traceable to Artesanias's injury. *See Finkelman v. NFL*, 877 F.3d 504, 510–12 (3d Cir. 2017). And the relief it seeks, including money damages, would likely redress that injury. *See id.* at 512.

Admittedly, Artesanias's injury flows from the alleged harm to Wilton's assets. But a creditor has constitutional standing when it asserts that by taking and keeping the debtor's assets, the defendants "kept th[o]se assets from [the creditor] and rendered [the debtor] insolvent, thereby contributing to [the creditor's] economic harm." *Enter. Fin. Grp., Inc. v. Podhorn*, 930 F.3d 946, 950 (8th Cir. 2019).

A contrary rule would deprive all creditors of constitutional standing to bring fraudulent-transfer claims against corporate plunderers because those claims always flow from harm to a debtor corporation. *See* 12 Pa. Cons. Stat. § 5108(b)(1) (giving creditors remedies against a transferee of the debtor's assets); Unif. Fraudulent Transfer Act § 8(b)(1) (1984) (same). So too with state-law claims that creditors can assert against an insolvent debtor's fiduciaries. *See, e.g.*, *Official Comm. of Unsecured Creditors ex rel. Lemington Home for the Aged v. Baldwin (In re Lemington Home for the Aged)*, 659 F.3d 282, 290 (3d Cir. 2011). We reject that approach.

## III. ARTESANIAS'S CLAIMS BECAME PROPERTY OF THE BANKRUPTCY ESTATE BECAUSE THEY RELY ON A DERIVATIVE THEORY OF RECOVERY

Now that we have confirmed our jurisdiction, we proceed to the merits. We start with whether Artesanias's claims against North Mill and Leisawitz Heller became property of

11

the estate. If they did, then only the bankruptcy trustee has the statutory authority to bring them unless abandoned. We conclude that those claims rely on a theory of recovery derivative of harm that Wilton suffered directly. If Artesanias prevails, all of Wilton's creditors would stand to benefit. So Artesanias's claims became property of the bankruptcy estate to be managed by the trustee.

### A. Only the trustee can pursue claims that rely on a derivative theory of recovery

Even though it has constitutional standing, Artesanias cannot pursue its claims if the Bankruptcy Code denies it the statutory authority to do so. As discussed, the Code makes some claims the exclusive province of the trustee, not a creditor like Artesanias. Only the trustee has the power to prosecute causes of action (1) that "existed at the commencement of the [bankruptcy] filing" and (2) that "the debtor could have asserted … on his own behalf." *Foodtown*, 296 F.3d at 169 n.5.

The first element is about timing. Artesanias's claims existed before Wilton's bankruptcy. Indeed, Artesanias brought those claims two months before the bankruptcy began. Even if it had not filed them, they still would have predated the bankruptcy because the alleged plundering preceded it. In bankruptcy, "a 'claim' arises when an individual is exposed … [to] conduct giving rise to an injury." *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 125 (3d Cir. 2010) (en banc) (quoting 11 U.S.C. § 101(5)).

The second element hinges on whether the claim is "general" to the estate or "personal" to a specific creditor. *Emoral*,

740 F.3d at 879 (quoting *Foodtown*, 296 F.3d at 170); *accord* 5 *Collier on Bankruptcy* ¶541.07 & n.1 (16th ed. 2020) (citing *Emoral*). Individual creditors have the statutory authority to bring only personal claims. *Emoral*, 740 F.3d at 879. That is because a general claim "inures to the benefit of all creditors" by enlarging the estate, and so "'the trustee is the proper person to assert the claim.'" *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)). The distinction between general and personal claims "promotes the orderly distribution of assets in bankruptcy" by funneling all asset-recovery litigation through a single plaintiff: the trustee. *Id.*

To distinguish general from personal claims, we focus not on the nature of the injury, but on the "theory of liability." *Emoral*, 740 F.3d at 879. Claims alleging that "third parties … wrongfully deplete[d] the debtor's assets" are general or derivative because "[e]very creditor has a similar claim for the diversion of assets of the debtor's estate." *Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*, 855 F.3d 84, 103 (2d Cir. 2017); *accord Emoral*, 740 F.3d at 879–80. The theory of recovery for those claims is "not tied to the harm done to the creditor by the debtor." *Tronox*, 855 F.3d at 103. Rather, it is "based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claim[s] against the debtor." *Id.* at 104.

So harm done mainly to the debtor can indirectly injure the creditors, making the claim a general one. If the theory of recovery "would be based on facts generally available to any creditor, and recovery would serve to increase the pool of

13

assets available to all creditors," then the claim is general, not personal. *Emoral*, 740 F.3d at 881. Only when a particular creditor suffers a direct, particularized injury that can be "directly traced" to the defendant's conduct is the claim personal to that creditor and not property of the estate. *Tronox*, 855 F.3d at 100 (quoting *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81, 89 (2d Cir. 2014)); *see id.* at 100–02 (collecting cases).

## B. Artesanias's claims rely on a derivative theory of recovery

Artesanias's claims against North Mill and Leisawitz Heller became property of the estate. According to Artesanias, the defendants "hinder[ed]" its ability to collect debts owed to it by Wilton by "divert[ing] assets from [an] insolvent corporation." App. 56. As in *Emoral* and *Tronox*, Artesanias's claims are "aimed at recovering estate assets." *Tronox*, 855 F.3d at 105 (citing *Emoral*, 740 F.3d at 880–81). Its theory of recovery thus derives from the plundering suffered by Wilton.

Artesanias's assertions that the plundering targeted and disproportionately affected it do not transform the harm into an injury unique to Artesanias. That its harm might be worse in degree than that suffered by other creditors does not change the fact that all the creditors' injuries from the plundering are the same in kind. Because Artesanias's claims depend on harm suffered directly by Wilton and only indirectly by Artesanias, its theory of recovery is not personal, but derivative of harm to the estate.

14

In reaching this conclusion, we decline to rely on the trustee's assertion that Artesanias's claims "belonged to … and continue to belong to Artesanias (not the Wilton estate)." App. 463. As the District Court rightly held, the trustee lacks authority to decide who has the statutory authority to bring those claims. 607 B.R. at 207–08. We must answer that legal question ourselves. Plus, as the bankruptcy court noted, the trustee's assertion contradicts Wilton's asset schedules, which included causes of action much like Artesanias's. 2018 WL 6440600, at *3. We will not outsource to the trustee our duty to determine what is part of the estate.

At bottom, Artesanias alleges that North Mill and Leisawitz Heller left Wilton "with insufficient assets to pay [its] creditors." *Tronox*, 855 F.3d at 105. Its claims rely on a general theory of recovery derivative of harm done to Wilton. The Bankruptcy Code thus gives the statutory authority to pursue those claims to the trustee.

## IV. THE TRUSTEE ABANDONED HIS STATUTORY AUTHORITY OVER ARTESANIAS'S CLAIMS

The trustee can, however, relinquish his statutory authority to bring general or derivative claims to a creditor. Because the Abandonment Order did just that, Artesanias regained the power to sue North Mill and Leisawitz Heller.

### A. Bankruptcy trustees can abandon to a creditor their authority to pursue the estate's claims

As discussed, the Bankruptcy Code makes a creditor's derivative causes of action property of the estate. From there, the trustee decides how best to manage them for the benefit of all

15

creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). One option is to prosecute those claims to judgment. *See, e.g.*, *Shearer v. Titus (In re Titus)*, 916 F.3d 293, 298–99 (3d Cir. 2019). Another is to settle and extinguish them. *See, e.g.*, *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 347–48 (3d Cir. 1999).

But the trustee also has a third option: he can instead relinquish those claims. For instance, he might formally abandon them if the cost of pursuing them would be "burdensome" or outweigh the likely gain to the estate. 11 U.S.C. § 554(a).

An abandoned claim, like abandoned property in general, flows to someone else. The abandoned property can flow back "to any party with a possessory interest in it." *Collier*, *supra*, ¶ 554.02[3]; *accord Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990) (per curiam) ("Following abandonment, whoever had the possessory right to the property at the filing of the bankruptcy again reacquires that right." (internal quotation marks omitted)), *aff'd*, 502 U.S. 410 (1992). If the bankruptcy has ended, abandonment sends the property back to the debtor. *See* 11 U.S.C. § 554(c). Otherwise, the property reverts to "some other party," like "a secured creditor who has possession of the property when the trustee abandons the estate's interest." *Collier*, *supra*, ¶ 554.02[3].

When, as here, the abandoned property is a cause of action, the right to assert it "revert[s] back to the prior holder." *Id.* ¶ 548.02[5][a]. Thus, if a trustee abandons a cause of action, the "creditor's right to pursue" it "spring[s] back to life." *Id.*; *accord St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 698

16

(noting that "a trustee could choose to abandon a claim, and allow creditors to pursue it independently").

To be sure, if the trustee wants to abandon any property during the bankruptcy, he must do so "overt[ly]." *Collier*, *supra*, ¶548.02[5][a]; *see also O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 200 n.3 (3d Cir. 2000) (noting that "[a]bandonment is an intentional act"). Thus, we and our sister circuits have declined to hold that a cause of action was abandoned when the evidence was "ambiguous." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 123–24 (2d Cir. 2008) (per curiam); *see also O'Dowd*, 233 F.3d at 200 n.3 (citing *Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657–58 (3d Cir. 1974)). But when the evidence of abandonment is clear, any abandoned causes of action revert to their prior owner. *Collier*, *supra*, ¶548.02[5][a].

## B. The trustee abandoned the claims to Artesanias

By the Abandonment Order's express terms, the trustee abandoned to Artesanias his statutory authority to pursue certain claims against North Mill and Leisawitz Heller. The Order relinquished "without limitation" all the estate's "claims" (as broadly defined in §101(5) of the Bankruptcy Code), except for the negligence, professional-liability, and breach-of-contract claims that the trustee was pursuing against Leisawitz Heller, plus certain claims against Wilton's old owner and his wife. App. 470–71. The trustee thus relinquished all claims that the Order did not expressly spare.

The abandoned claims included all of Artesanias's current claims against Leisawitz Heller (claims for breach of fiduciary

17

duty, fraudulent transfer, unreasonable disposition of assets, and aiding and abetting and conspiring to commit those torts). The abandoned claims also included Artesanias's claims against North Mill. These claims survived the trustee's separate settlements with Artesanias and North Mill, which extinguished all the estate's claims against North Mill while preserving Artesanias's separate claims against it.

We decline to read the Abandonment Order as relinquishing those claims only to Wilton. At some points, the Order says the claims are abandoned "to the Debtor"; at others, it says they go to both "the Debtor" and "Artesanias." App. 470–72. But read as a whole, the Order shows that "Artesanias or the Debtor" could "recover … on account of the Abandoned Claims." App. 471. It also provides that Artesanias's recoveries would "be deducted from" its claims against the estate. *Id.* The only way to make sense of those clauses is to read them as allowing some of the claims to go to Artesanias. Plus, that reading returns each claim to its pre-bankruptcy owner. Until then, some claims were Wilton's, while others belonged to Artesanias as "the prior holder." *Collier*, *supra*, ¶548.02[5][a]; *see id.* ¶554.02[3].

The District Court declined to resolve that tension in the wording of the Abandonment Order. Instead, it read our decision in *Cybergenics* as preventing the trustee from transferring claims to Artesanias, no matter what the Order said. 607 B.R. at 209–10. But *Cybergenics* does not hold that trustees cannot transfer causes of action. It leaves that question open because the asset transfer at issue did not reach the creditors' claims. *Official Comm. of Unsecured Creditors of Cybergenics Corp.*

18

*ex rel. Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 244–45 (3d Cir. 2000). And elsewhere, it reaffirms that "outside of the context of bankruptcy," claims challenging asset plundering, like Artesanias's, "belong[ ] to [a debtor's] creditors." *Id.* at 242. So *Cybergenics* supports, rather than undermines, our holding: Chapter 7 trustees can abandon asset-plundering claims back to the creditors who had them before the bankruptcy.

We thus hold, contrary to the District Court, that the Abandonment Order "spr[ang] back to life" and so restored Artesanias's power to pursue its claims against North Mill and Leisawitz Heller. *Collier, supra*, ¶548.02[5][a]. To be sure, Leisawitz Heller also argues that Artesanias's amended complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) and Pennsylvania law. We leave it to the District Court to decide whether Artesanias raised claims on which relief can be granted.

\* \* \* \* \*

Artesanias had constitutional standing to sue North Mill and Leisawitz Heller for plundering Wilton's assets. The bankruptcy merely deprived Artesanias of the statutory authority to bring those claims, transferring that power to the trustee. But by abandoning those claims, the trustee resurrected Artesanias's power to prosecute them. So we will vacate and remand for further proceedings.

19